## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALANA MARIE SOUZA a/k/a ALANA CAMPOS, *et al.*, <br><br>　　　Plaintiffs, <br><br> v. <br><br> ALGOO REALTY, LLC d/b/a CASONA RESTAURANT, and CHRISTOPHER D. ALGOO, <br><br>　　　Defendants. | No. 3:19-cv-00863 (MPS) |

### RULING ON MOTION TO DISMISS

Each of the ten Plaintiffs in this action is a "well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services." ECF No. 21 ¶ 25. Plaintiffs allege that the Defendants—operators of the Casona Restaurant, a restaurant and nightclub in Hartford, Connecticut—misappropriated images of the Plaintiffs and used them without Plaintiffs' consent in advertisements for the Restaurant. Plaintiffs bring nine counts against the Defendants under the Lanham Act, the Connecticut Unfair Trade Practices Act, and state common law. The Defendants moved to dismiss the Plaintiffs' Amended Complaint in its entirety and moved to strike portions of the Complaint and its exhibits as time barred. ECF No. 23. For the reasons set forth below, the motion to dismiss is GRANTED IN PART AND DENIED IN PART and the motion to strike is DENIED.

## I.    FACTUAL ALLEGATIONS

The following facts are drawn from the Plaintiffs' Amended Complaint, ECF No. 21, and are accepted as true for the purposes of this motion. I also consider the exhibits attached to the

1

Plaintiffs' original complaint, ECF Nos. 1-1 through 1-10, which are incorporated by reference in the Amended Complaint and in the parties' briefing on the motion to dismiss. *See Yak v. Bank Brussels Lambert, BBL (USA) Holdings Inc.*, 252 F.3d 127, 130 (2d Cir.2001) ("On a motion to dismiss, the court may consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.").

Each Plaintiff is a "well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services." ECF No. 21 ¶ 25.[1] Plaintiffs allege that "their good will and reputation" are of high value in their careers and are "critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands." *Id.* ¶ 26. To maintain their brands and further their careers, Plaintiffs are "selective concerning the companies, and brands, for which they model," and each of them typically "seeks to control the use and dissemination of her image" by participating in the "negotiation, vetting and selection of modeling, acting, brand spokesperson or hosting engagements." *Id.* ¶¶ 27–28. "In all instances of commercial marketing and promotion of her image, each Plaintiff has negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions, and for agreed upon compensation." *Id.* ¶ 29.

The Defendants operated Casona Restaurant, a restaurant and nightclub in Hartford, Connecticut, *id.* ¶ 20, and operated and controlled Casona's "social media accounts, including its Facebook, Twitter, and Instagram accounts," *id.* ¶ 71. Specifically, Algoo Realty, LLC, operated the restaurant, and Christopher Algoo—"the  principal, owner and/or CEO of Algoo Realty,

---

[1] The Amended Complaint summarizes the backgrounds and careers of each of the ten Plaintiffs, which I need not reiterate here. *See* ECF No. 21 ¶¶ 40–69.

2

LLC"—"maintains operational control over Casona, including all advertising relating thereto." *Id.* ¶¶ 20–22. Plaintiffs allege that the Defendants misappropriated and intentionally altered images of the Plaintiffs "in order to make it appear that [the Plaintiffs] worked at, endorsed, or were otherwise associated or affiliated with Casona Restaurant," even though "no Plaintiff ever worked at, sponsored or promoted, or was otherwise affiliated with Casona." *Id.* ¶¶ 30–31. Defendants used images of the Plaintiffs without consent. *Id.* ¶ 94. Plaintiffs also allege that Defendants intended "to mislead consumers as to the women who worked at or endorsed Casona and thereby attract consumers to the Club for [the Defendants'] own commercial benefit." *Id.* ¶ 33. The images "remained up" on Defendants' social media accounts "for months and/or years after their original publication," and "any person visiting Defendants' social media account(s) could view, access, and download the Image from the date it was first posted until it was removed." *Id.* ¶¶ 34–35. Plaintiffs never "receive[d] any remuneration" for the Defendants' use of their images, and Defendants' use of the images "ha[s] caused each Plaintiff to suffer substantial damages." *Id.* ¶ 37. The Defendants' "[u]nauthorized use of Plaintiffs' images deprives [Plaintiffs] of income they are owed relating to the commercialization of their Images," and "any improper or unauthorized use of their Images substantially injures their careers"— "especially . . . insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are employees, endorse a night club, or are otherwise associated or affiliated with a night club." *Id.* ¶¶ 90–92.

    The Plaintiffs' original complaint attached ten exhibits containing advertisements for the Casona Restaurant depicting each of the Plaintiffs at least once. ECF Nos. 1-1 through 1-10. The Exhibits are screenshots of posts from the Restaurant's social media pages and/or website, containing advertisements for the Restaurant and its events. ECF No. 24 at 3. The screenshots

include the dates of the original posts, which range from 2014 to 2018. I include here one example of a screenshot attached to the Plaintiffs' Complaint. ECF No. 1-1. The model pictured is allegedly Plaintiff Alana Marie Souza a/k/a Alana Campos. ECF No. 21 ¶ 41.



## I.    LEGAL STANDARDS

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must "draw all reasonable inferences in favor of the non-

moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims. . . ." *Scott v. Town of Monroe*, 306 F.Supp.2d 191, 198 (D. Conn. 2004). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (brackets omitted).

"Resolution of a Rule 12(f) motion is left to the district court's discretion, and such motions are generally disfavored and infrequently granted." *Maratea v. State of Connecticut Dep't of Educ.*, No. 3:14-CV-01785, 2016 WL 777902, at \*4 (D. Conn. Feb. 29, 2016). In order to prevail on a motion to strike, the movant "must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *In re Fannie Mae 2008 Sec. Litig.*, 891 F.Supp.2d 458, 471 (S.D.N.Y.2012) *aff'd*, 525 F. App'x 16 (2d Cir.2013) (internal quotation marks and citations omitted).

## II.   DISCUSSION

The Plaintiffs assert nine counts in their Complaint. ECF No. 21. They allege false advertising and false association in violation of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(B) and 1125(a)(1)(A), respectively. *Id.* at 21-22. They also assert various state law claims, including two privacy torts (appropriation of likeness and false light), a violation of CUTPA, negligence, conversion, unjust enrichment, and quantum meruit. *Id.* at 24-34. The Defendants move to dismiss all nine counts ECF No. 24 at 1.

### A.   <u>Lanham Act Claims (Counts One and Two)</u>

The Lanham Act provides in relevant part that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). This section creates "two distinct bases of liability: false association and false advertising." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). The Plaintiffs here allege both.

### 1. Timeliness

The Defendants argue that the Lanham Act claims of three Plaintiffs are time-barred because the "statute of limitations for Lanham Act claims is three years," and the images of these three Plaintiffs were published four or five years before this action was commenced. ECF No. 24 at 6, 10. But, as Plaintiffs note, this is an inaccurate statement of the law. The Lanham Act "contains no statute of limitations," but "expressly provides for defensive use of 'equitable principles, including laches.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n.15 (2014) (quoting 15 U.S.C. § 1115(b)(9)). A defendant asserting a laches defense must establish that: "1) the plaintiff had knowledge of the defendant's use of its mark; 2) the plaintiff inexcusably delayed taking action with respect to that use; and 3) the defendant would be prejudiced if the court permitted the plaintiff to assert its rights belatedly." *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 24 (D. Conn. 2009), *aff'd*, 410 Fed. App'x 362 (2d

Cir. 2010) (quotation marks and citation omitted); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) ("Affirmative defenses may be adjudicated [on a motion to dismiss] . . . where the facts necessary to establish the defense are evident on the face of the complaint."). Courts in the Second Circuit look to "the most appropriate or the most analogous state statute of limitations" to determine which party bears the burden of proof of proving a laches defense. *Gibson v. Metropolis of CT LLC*, No. 19-CV-00544, 2020 WL 956981, at *4 (D. Conn. Feb. 27, 2020); *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 746 (2d Cir. 2016) (explaining that if the analogous statute of limitations has not run, the defendant bears the burden of proving the defense; if it has run, the plaintiff bears the burden to show why laches should not apply). Here, "Connecticut's three-year statute of limitations for fraud claims is the most closely analogous statute of limitations" for the Plaintiffs' Lanham Act claims. *Gibson*, 2020 WL 956981, at *4. But "federal law determines when a Lanham Act claim accrues," *id.*, and "[u]nder federal law, a cause of action generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks and citation omitted). Therefore, in Lanham Act claims, "the plaintiff's injury accrues when the plaintiff knew or had reason to know of its injury." *Gristede's Foods, Inc. v. Unkechauge Nation*, No. 06-CV-1260, 2008 WL 3334032, at *4 (E.D.N.Y. Aug. 8, 2008).

In their motion to dismiss, Defendants do not argue that the defense of laches should apply to the Plaintiffs' Lanham Act claims. *See* ECF No. 27 at 2 ("Defendants have **not** asserted that any plaintiff's claim in this matter is barred due to laches." (emphasis in original)). They make no arguments about whether or when Plaintiffs knew or should have known of the Restaurant's use of their images, and the Complaint does not reveal this information either. So

the Defendants cannot show—and have not attempted to show—when the Plaintiffs' alleged

Lanham Act injuries accrued. *See Slainte Investments Limited Partnership v. Jeffrey*, 142 F.

Supp. 3d 239, 253-54 (D. Conn. 2015) (explaining that "a motion to dismiss may be granted if a

complaint's allegations affirmatively establish an action's untimeliness, but it may not be granted

simply because a complaint failed to include allegations affirmatively establishing its

timeliness"). The Defendants also do not argue that the Plaintiffs "inexcusably delayed taking

action," or that they would be prejudiced if the court permitted the Plaintiffs to assert Lanham

Act claims.

I therefore deny the motion to dismiss the Plaintiffs' Lanham Act claims on timeliness

grounds because the Complaint does not include factual allegations satisfying all of the elements

of a laches defense. *See Gibson*, 2020 WL 956981, at *5 (denying similar motion to dismiss

Lanham Act claims for untimeliness where defendants "simply assume[d] an accrual date

identical to the publication date"); *see also  CSL Silicones Inc. v. Midsun Grp. Inc.*, 170 F. Supp.

3d 304, 317 n.11 (D. Conn. 2016) (noting that "laches is a fact-based inquiry" such that "courts

rarely resolve the issue at the pleading stage").

### 2.  *False Advertising (Count One)*

The Defendants also challenge the Plaintiffs' Lanham Act claims on the merits, arguing

that the Plaintiffs failed to state a claim either for false advertising or for false association.

To state a false advertising claim, a plaintiff must allege that "(1) the challenged

advertisement is false; (2) the misrepresentation was material because it relates to an inherent

quality or characteristic of the product and, therefore, affects a consumer's purchasing decision;

(3) the defendant placed the false or misleading statement in interstate commerce; and (4) the

plaintiff has been injured by the misrepresentation, either by direct diversion of sales or by a

lessening of goodwill associated with its products." *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 292 (D. Conn. 2019) (citations and internal quotation marks omitted). A plaintiff can show falsity by demonstrating either "that the challenged advertisement is literally false, *i.e.*, false on its face," or "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). Under the latter theory, "[P]laintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener [or viewer] that conflicts with reality—a claim that invites a comparison of the impression, rather than the statement, with the truth." *Id.* at 153 (internal quotation marks omitted).

The Defendants argue that the Plaintiffs' claim fails to allege falsity. ECF No. 24 at 17. Specifically, they assert that the advertisements were not false because they were not aimed at selling the Plaintiffs as a product. *Id.* at 16. "Plaintiffs are certainly not alleging that the advertisements were aimed to sell Plaintiffs as products in any way . . . the advertisements were for events, not products." *Id.* But the fact that the Plaintiffs themselves were not the product does not stop the ads from being misleading. When all reasonable inferences from the complaint are drawn in the plaintiffs' favor, the advertisements, although they contain no literal falsehoods, "create the false impression that Plaintiffs worked at Casona Restaurant, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same." ECF No. 21 ¶ 83. While the advertisements do not explicitly state that the Plaintiffs work at or endorse Casona Restaurant, they do depict the Plaintiffs prominently, and at times with pictures of other patrons or performers—such as DJs—at the Restaurant. ECF No. 1-2 at 6-7 (apparently depicting Plaintiff Geiger along with DJs, dance instructor, and/or other patrons). At other times, the advertisements depict the Plaintiffs exclusively and proximately located near the headline of the

event being promoted. *E.g.*, ECF No. 1-4 at 4 (apparently depicting Plaintiff Sampedro alone along the right-hand border with the headline "Latin Fridays" in white across the Plaintiff's image). At least at the pleadings stage, the facts alleged and the images attached to the Complaint support an inference that the advertisements create a false impression that the Plaintiffs worked at, attended, endorsed, or were somehow affiliated with the Restaurant. The Plaintiffs have therefore sufficiently pled falsity at this stage. *See Geiger*, 424 F. Supp. 3d at 293 (finding in similar case by models against night clubs that "Plaintiffs adequately allege that the challenged advertisements are false because of the allegedly inappropriate association between the Clubs and the Plaintiffs that the advertisements evoke." ).

### 3.   *False Association (Count Two)*

To state a false association claim, a plaintiff must show that the defendant "(1) in commerce; (2) made a false or misleading representation of fact; (3) in connection with goods or services; (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Gibson v. SCE Group, Inc.*, 391 F. Supp. 3d 228, 244 (S.D.N.Y. 2019) (citation omitted). The Defendants argue that the Plaintiffs have failed to allege facts in support of the fourth element—consumer confusion, stating that "Plaintiffs have failed to make any allegations specific to the strength of their trademarks; specifically, none of the Plaintiffs have made allegations sufficient to establish fame or recognizability. Therefore, to the extent that their names on the . . . Complaint do not call to mind their faces or any of their accomplishments in the mind of the Court, Defendants assert that Plaintiffs have no false association claim." ECF No. 24 at 19.

"[T]he 'mark' is the plaintiff's persona and the 'strength of the mark' refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed."

*Toth v. 59 Murray Enterprises, Inc.*, 15-CV-8028, 2019 WL 95564, at *6 (S.D.N.Y. 2019)

(citation and internal quotation marks omitted). The Defendants rely on *Gibson v. SCE Group,*

*Inc.* for the proposition that "misappropriation of a completely anonymous face could not form

the basis for a false endorsement claim, because consumers would not infer that an unknown

model was 'endorsing' a product, as opposed to lending her image to a company for a fee."

*Gibson v. SCE Group, Inc.*, 391 F. Supp. 3d at 245.[2] The *Gibson* court found on a motion for

summary judgment that the evidence established that the plaintiffs had "relatively weak marks,"

and as a result, the evidence weighed against establishing a false endorsement claim. *Id.* at 247;

*see also Toth*, 2019 WL 95564, at *7 (denying motion for summary judgment as to plaintiff who

offered persuasive evidence of the strength of her mark, but granting motion for summary

judgment as to plaintiffs who "failed to adduce evidence of a strong mark [because] none of

these other plaintiffs offered evidence of significant income earned through their various

appearances").

     A Lanham Act claim, however, "does not require celebrity, only a likelihood of consumer

confusion. . . . [T]here is a level of consumer recognition short of celebrity—as the term is

usually understood—capable of causing consumer confusion." *Bondar v. LASplash Cosmetics*,

12-CV-1417, 2012 WL 6150859, * 7 (S.D.N.Y. 2012).   And here, the Plaintiffs have alleged

facts to support the strength of their marks. They allege that they are "well-known professional

model[s] who earn[] [their] livelihoods modeling and licensing [their] Images to companies,

magazines and individuals for the purpose of advertising products and services." ECF No. 21 ¶

25. The Complaint describes the professional accomplishments of each Plaintiff including, but

---

[2] Some courts, including *Gibson*, use the term "false endorsement" as a synonym for
"false association."

11

not limited to, a "feature in the movie 'Las Vegas,'" "an appearance on The Howard Stern Show in a Miss HTV March contest," an appearance with "8-time Grammy nominee rapper Lil Wayne in singer Keri Hilton's music video," "a regular role in . . . [a] sitcom," and appearances in "several episodes of the reality TV series The Girls Next Door." *Id.* at ¶¶ 40, 43, 52, 55. These allegations are sufficient at the pleading stage to assert the strength of the Plaintiffs' marks. I therefore decline to dismiss counts one and two.

## B. Appropriation of Likeness (Count Three)

The Defendants move to dismiss the Plaintiffs' claim for appropriation of likeness on two separate grounds: timeliness and failure to state a claim upon which relief can be granted. ECF No. 24 at 8, 20.

### 1. Timeliness

The Defendants assert that certain Plaintiffs' common law claims for appropriation of likeness (count three) and false light (count four) should be dismissed as time barred because the statute of limitations for tort claims in Connecticut is "three years from the date of the act or omission complained of" and the images of three Plaintiffs were published more than three years before suit was filed.[3] Appropriation of likeness and false light are invasion of privacy torts. *See Foncello v. Amorossi*, 931 A.2d 924, 929 (Conn. 2007) (listing the four categories of invasion of privacy torts as "(a) unreasonable intrusion upon the section of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public"). Under

---

[3] The Plaintiffs argue in response that their Complaint alleges a continuing course of conduct by the Defendants and thus, tolled the statute of limitations. ECF No. 25 at 20. "The question of the applicability of the continuing course of conduct doctrine . . . must be analyzed on a count by count basis." *Gibson v. Metropolis of CT LLC*, 2020 WL 956981, at *6.

Connecticut law, invasion of privacy claims are subject to the three-year statute of limitations set forth in Conn. Gen. Stat. § 52-577. Section 52-277 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "The date of the act or omission complained of is the date when the . . . conduct of the defendant occurs." *Watts v. Chittenden*, 22 A.3d 1214, 1219 (Conn. 2011).

Here, the act or omission complained of is the publication of the advertisements. The Plaintiffs do not state in their Complaint the dates that the images were published, but the images show the date of the original post on the social media platform. ECF Nos. 1-1 through 1-10 The dates range from 2014 to 2018. *Id.* The Plaintiffs filed their original Complaint on June 4, 2019. ECF No. 1. Under the three-year statute of limitations, every claim regarding an advertisement published prior to June 4, 2016 would be time barred. Conn. Gen. Stat. § 52-577. However, in certain circumstances, the three-year statute of limitations may be tolled under the continuing course of conduct doctrine. *Watts*, 22 A.3d at 1219. The doctrine has been recognized in many cases involving claims sounding in negligence and, in *Watts*, in a case involving intentional infliction of emotional distress. *Id.* at 1221 (holding that the existence of an original duty is not necessary to apply the continuing course of conduct doctrine to a claim of intentional infliction of emotional distress).

The Plaintiffs cite no case law, and I have found none, that suggest that the continuing course of conduct doctrine applies to invasion of privacy torts. *See Brady v. Bickford*, No. CV-116007541, 2015 WL 1727591, *8 (Conn. Sup. Ct. 2015) ("This court is unaware of any Connecticut cases applying the continuing course of conduct doctrine to the tort of invasion of privacy."). However, the court in *Brady* explicitly declined to address whether the doctrine applied to appropriation of likeness claims. *Id.* at *7 n.5. In *Gibson v. Metropolis of CT LLC,* the

13

court "was not prepared to hold that Plaintiffs[] cannot, as a matter of law, invoke the continuing course of conduct doctrine to toll the statute of limitations for their invasion of privacy claims." *Gibson,* 2020 WL 956981, at *7. I also decline to conclude, as a matter of law, that the Plaintiffs cannot invoke the continuing course of conduct doctrine because of the nature of the alleged ongoing harm. *See Watts*, 22 A.3d at 1222 ("'A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct. The injuries about which the plaintiff is complaining in these cases are the consequence of a numerous and continuous series of events. . . . [I]n cases in which the continuing course of conduct doctrine is applicable, each incident increases the plaintiff's injury. Not only would it be unreasonable to require him, as a condition of preserving his right to have the full limitations period to sue . . . to bring separate suits during the limitations period after each incident giving rise to the claim; but it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them.'" (quoting *Heard v. Sheahan*, 253 F.3d 316, 319-20 (7th Cir. 2001); (alterations omitted)).

To support their theory that the Defendants engaged in a continuing course of conduct tolling the statute of limitations, the Plaintiffs must have alleged that the Defendants: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Flannery v. Singer Asset Finance Co., LLC ,* 94 A.3d 553, 570 (Conn. 2014) (citation omitted). In their Complaint, the Plaintiffs allege that "Defendants' unauthorized use of Plaintiffs' images was continuous and ongoing insofar as the . . . advertisements remained up for months and/or years after their

14

original publication. . . . [and] the . . . use . . . [of] the subject images was ongoing and continuous in that any person visiting Defendants' social media account(s) could view, access, and download the image from the date it was first posted until it was removed." ECF No. 21 ¶¶ 31-35. The Plaintiffs also allege that they "are further informed and believe . . . that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint." *Id.* at ¶ 152.

These allegations make the Plaintiffs' invocation of the continuing conduct doctrine plausible. Continued publication by leaving the images "up for months," as well as "republicize[ing]" the images, could be considered a continuing breach of duty. I therefore decline to dismiss the appropriation of likeness claim as untimely.

### 2. *Merits*

The Defendants also challenge the Plaintiffs' appropriation of likeness claim asserting that the "Plaintiffs make no allegations as to the use of their reputation, prestige, social or commercial standing, public interest, or other value of their likeness." ECF No. 24 at 21.

"Though there is little case law on appropriation of likeness in Connecticut, the tort subjects a defendant to liability for appropriating to his own use or benefit the name or likeness of another, and most commonly involves the use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." *Gibson,* 2020 WL 956981, at *6 (*citing Beckner v. Connecticut Community for Addiction Recovery, Inc.*, No. CV-095005324S, 2010 WL 4226736, at *21-22 (Conn. Sup. Ct. 2010) (internal quotation marks omitted)). The "predominant issue" "in an appropriation of likeness claim" "involves identity," and in other jurisdictions, identity is defined as "any attribute of an individual that serves to

identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Beckner,* 2010 WL 4226736, at \*22-23 (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 908 (7th Cir. 2005)). In *Beckner*, the court granted the defendants' motion to strike a claim for appropriation of likeness because the only identifying fact alleged was the plaintiff's first name on a website. *Beckner,* 2010 WL 4226736, at \*23.

The Plaintiffs in this case have alleged more than simply an appropriation of their first names. They have alleged appropriation of their likeness in the form of "Plaintiffs' images [and] photos," which are closely associated with their professional identities and, indeed, the means of their livelihood.  ECF No. 21 ¶¶ 2, 25, 28, 81. In the photos and images, the Plaintiffs are easily identifiable. *See Beckner,* 2010 WL 4226736, at \*23 ("[Plaintiff's] likeness was not used because her photograph never appeared online."). They have further alleged that the Defendants published their images "to attract business to the [Restaurant] and generate revenues. . . ." ECF No. 21 ¶ 129. The allegations support a claim for appropriation of likeness. I therefore decline to dismiss the claim.

### C.  **False Light (Count Four)**

The Defendants assert the same timeliness argument for the tort of false light as they asserted for the tort of appropriation of likeness. ECF No. 24 at 8. For the reasons previously discussed, I decline to dismiss the false light claim as untimely. *See* part II.B.1. of this opinion.

The Defendants argue next that the Plaintiffs' claim for false light should be dismissed because the Plaintiffs have failed to allege facts suggesting that they were offended by the advertisements or that a reasonable person would have been offended by the advertisements. ECF No. 24 at 23. "To establish invasion of privacy by false light, the plaintiffs [are] required to

show that (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Honan v. Dimyan*, 726 A.2d 613, 618 (Conn. App. 1999) (citations and internal quotation marks omitted); *see also Machleder v. Diaz*, 801 F.2d 46, 49 (2d Cir. 1986) (holding that "to sustain a false light invasion of privacy claim, such portrayal must be substantially false and offensive to an ordinary person"). "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may be reasonably expected to be taken by a reasonable man in his position." *Jonap v. Silver*, 474 A.2d 800, 805 (Conn. App. 1984) (internal quotation marks and citations omitted).

The Plaintiffs allege that the images in the advertisements were substantially false "[i]nsofar as no Plaintiff ever worked at, sponsored or promoted, or was otherwise associated or affiliated with [the Restaurant]. . . ." ECF No. 21 ¶ 31. The Defendants' allegedly  "invaded and violated Plaintiffs' privacy and portrayed them in a false light by creating the false impression with the consumers that Plaintiffs were either working at the [Restaurant], endorsed same, were affiliated, associated, or otherwise connected with same, or had agreed to promote same." *Id.* at ¶ 156. The only facts that Plaintiffs allege regarding the offensive nature of the conduct are that the Defendants "altered" the Plaintiffs' images "so as to reach a new audience and/or promote a different product," and that their "[a]ffiliation with a night club could lead to significant potential career and personal damage to a professional model because it could lead other clients to refuse to work with her or drop her as a model." *Id.* at ¶¶ 155, 157. Essentially, the Plaintiffs allege that their images have been altered to promote a product that could damage their professional

reputation. *Id.* This is something of a close call, because there are no allegations that the Defendants' nightclub hosted nude or semi-nude performances (as in other cases brought by these and other models by Plaintiffs' counsel) and the Complaint does not specify how the images were altered. Nonetheless, when all reasonable inferences are drawn in the Plaintiffs' favor, I find that the allegations of a false association with the Defendants' nightclub are sufficient to state a claim that a reasonable person would be highly offended by such an implied connection. See *Jonap*, 474 A.2d at 806 (a "major misrepresentation of [a person's] character, history, activities or beliefs" can be considered highly offensive to a reasonable person). I therefore decline to dismiss the claim.

### D.  CUTPA (Count Five)

The Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," § 42-110b, and provides a private right of action to "[a]ny person who suffers any ascertainable loss . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b." § 42-110g. The statute of limitations for a CUTPA claim is three years. *See* Conn. Gen. Stat. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter.").

The Defendants move to dismiss the Plaintiffs' CUTPA claim as barred by the three-year statute of limitations. Plaintiffs assert that the limitations period was tolled by the continuing course of conduct doctrine. ECF No. 25 at 5. "Connecticut courts have applied the continuing course of conduct doctrine to toll the CUTPA limitations period." *Bartold v. Wells Fargo Bank*, N.A., 14-CV00865, 2015 WL 7458504, at *5 (D. Conn. 2015) (internal quotation marks omitted). For the reasons previously discussed, I cannot conclude at this stage that the continuing

course of conduct would not apply to toll the Plaintiffs' CUTPA claim. *See* part II.B.1 of this opinion. The Plaintiffs have alleged that the later republication of the images related to the prior act of publishing the images by alleging that the Defendant's republicized the images to reach a new audience. *See Bartold*, 2015 WL 7458504, at *5 (denying motion to dismiss because plaintiff "ha[d] alleged later wrongful acts related to the alleged deceptive acts occurring prior to the limitations period").

The Defendants also move to dismiss the CUTPA claim stating that the claim "is legally insufficient because it fails to adequately allege substantial injury on the part of the Plaintiffs" in the form of an "ascertainable loss." ECF No. 24 at 25.

To assert a CUTPA claim, "a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." *Di Teresi v. Stamford Health System, Inc.*, 88 A.3d 1280, 1283 (Conn. App. 2014) (quoting *Arties Auto Body, Inc. b. Hartford Fire Ins. Co.*, 947 A.2d 320, 330 (Conn. 2008)). An ascertainable loss is "a loss that is capable of being discovered, observed or established," one that is "measurable even though the precise amount is not known." *Id.* (internal quotation marks omitted).

The Plaintiffs allege in their Complaint that their "reputations w[ere] injured, and each of the Plaintiffs' ability to market herself as a model was injured. . . . As a result . . . Plaintiffs have suffered damages in an amount to be determined at trial." ECF No. 21 ¶¶ 175-76. The extent of the Plaintiffs' damages in terms of a specific dollar amount has not been, and need not have been, alleged by the Plaintiffs. The Plaintiffs' allegations are sufficient to support their assertion that their ability to market themselves as models was injured and thus an inference of ascertainable loss. I therefore decline to dismiss the Plaintiffs' CUTPA claim.

### E. <u>Negligence/Respondeat Superior (Count Six)</u>

The Defendants move to dismiss the Plaintiffs' negligence claim as untimely. ECF No. 24 at 9. The Plaintiffs assert that the continuing course of conduct doctrine tolls the negligence statute of limitations period. ECF No. 25 at 5. As noted above, in Connecticut, the continuing course of conduct doctrine has been recognized in many cases involving claims sounding in negligence.  In their negligence claim, as in their other tort claims, the Plaintiffs allege that the Defendants republicized Plaintiffs' images "for their own use and financial gain." ECF No. 21 ¶¶ 152, 165. I therefore decline to dismiss the Plaintiffs' negligence claim as untimely.

Next, the Defendants move to dismiss the Plaintiffs' negligence claim for failure to state a claim upon which relief can be granted. ECF No. 24 at 30. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Archambault v. Soneco/NE., Inc.*, 946 A.2d 839, 848 (Conn. 2008). The Defendants argue that the negligence claim should be dismissed because the Defendants owed no duty to the Plaintiffs. ECF No. 24 at 30. "[T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate the harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibilities for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . [T]he determination of whether a duty exists . . . is a question of law.*" Bloomfield Health Care Center of Connecticut, LLC v. Doyon*, 197 A.3d 415, 423 (Conn. App. 2018) (emphasis, citations, and internal quotation marks omitted).

In their Complaint, the Plaintiffs allege that the "Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights . . . [and] further owed a duty of care to consumers at large

20

to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices." ECF No. 21 ¶¶ 157-58. I have no difficulty concluding that the Plaintiffs have sufficiently alleged that the Defendants owed a duty to the Plaintiffs and to consumers to refrain from publishing misappropriated and altered images for the financial benefit of the Defendants. The Connecticut Appellate Court noted in *Bloomfield* that "the common law is not static but dynamic, and often evolves to adapt to the changing conditions of society." *Bloomfield Health Care Center of Connecticut, LLC*, 197 A.3d at 423. It is reasonably foreseeable that an ordinary person in the Defendants' position would have anticipated that harm would result from misappropriating, altering, and publishing images of well-recognized models for commercial purposes. I also determine that, as a matter of public policy, the Defendants' could be responsible to the Plaintiffs for their negligent conduct. *See Geiger*, 424 F. Supp. 3d at 300 (denying motion to dismiss negligence claim brought by some of the same plaintiffs because "[t]he application of that two-part test here, of foreseeability and public policy necessity, suggests liability could be possible"). I therefore decline to dismiss Plaintiffs' negligence claim.

The Defendants assert that the respondeat superior claim should be dismissed because "Plaintiffs make no claim as to a specific employee of Defendants; it appears they have no evidence as to any particular employee of the Defendants and are pleading respondeat superior within the negligence claim without a good-faith basis for doing so." ECF No. 24 at 29. "Under the common-law principle of respondeat superior, an employer is vicariously liable for compensatory damages arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment." *Matthiessen v. Vanech*, 836 A.2d 394, 406 (Conn. 2003) (citation omitted).

Although the Plaintiffs' Complaint alleging respondeat superior "is not a model with respect to the detail provided, it is sufficient." *Connors v. Lexington Ins. Co.*, 666 F. Supp 434, 447 (E.D.N.Y. 1987). The Complaint alleges that the Defendants failed to enforce or implement polices to ensure that laws were not violated and failed to oversee the employees. ECF No. 21, Count 6,¶ 160. The Plaintiffs allege additional facts in support of respondeat superior stating that the "Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Connecticut law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents." *Id.* ¶ 160.

"[B]ecause the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 351 (E.D.N.Y. 2019) (citation omitted). I therefore decline to dismiss the Plaintiffs' respondeat superior claim.

## F.  Conversion (Count Seven)

"Conversion is an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 934 A.2d 227, 234 (Conn. 2007). "[T]he party alleging conversion . . . must prove a sufficient property interest in the items in question." *Id.* at 235. "In Connecticut, intangible property interests have not traditionally been subject to the tort of conversion, except for those intangible property rights evidenced in a document." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 761 A.2d 1268, 1281 (Conn. 2000) (declining to decide whether to extend the tort of conversion to include intangible property rights).

22

The Plaintiffs allege that they were "the exclusive owners of all right, title and interest in their images, and have property interests thereon." ECF No. 21 ¶ 164. They allege that the Defendants "converted Plaintiffs' property rights in their images for their own use and financial gain. . . ." *Id.* ¶ 165. The Defendants argue that the Plaintiffs' claims "pertain to intangible rights; namely their likenesses in images. As Connecticut does not recognize a cause of action in conversion for intangible property, Plaintiffs have no cause of action." ECF No. 24 at 31-31. It is unclear on the face of the Complaint exactly what Plaintiffs intend to refer to when they use the term "Images" within their Complaint. They define the term as "images, photos and likeness (collectively, 'Images')." ECF No. 21 ¶ 2. Even if I were to assume that the images constituted tangible property, the Plaintiffs have not set forth facts alleging how the Defendants' use of their images has *excluded* the Plaintiffs from their ownership rights. *See Lancaster v. Ecuadorian Investment Corp.*, 19-CV-015812020 WL 1863305, at *2 (D. Conn. 2020); *see also Geiger*, 424 F. Supp. 3d at 301. The Plaintiffs do not allege that they are unable to use their images as a result of the Defendants' alleged conversion. I therefore dismiss the Plaintiffs' conversion claim.[4]

### G.  Unjust Enrichment (Count Eight)

The Defendants first assert that the Plaintiffs' claim for unjust enrichment is time barred. ECF No. 24 at 10.

"[W]herever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed. . . . Under such circumstances, the basis of the plaintiff's recovery is the unjust enrichment of the defendant. . . . A right of recovery under the

---

[4] I need not consider the Defendants' argument that the conversion claim is time barred because the Plaintiffs have failed to allege the elements for such a claim. ECF No. 24 at 9-10.

doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is

contrary to equity and good conscience for one to retain a benefit which has come to him at the

expense of another. . . . With no other test than what, under a given set of circumstances, is just

or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any

case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct

of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of

equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must

prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the

plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."

*New Hartford v. Connecticut Res. Recovery Auth.*, 970 A.2d 592, 609 (Conn. 2009).

Unjust enrichment is an equitable remedy and "[s]tatutes of limitations do not apply in a

strict fashion to causes of action arising in equity." *Gov't Employees Ins. Co. v. Barros*, 195 A.3d

431, 435 (Conn. App. 2018). "[A] party asserting a claim sounding in equity may be barred from

seeking equitable relief by the defense of laches, which applies only if there has been an

unreasonable, inexcusable and prejudicial delay in bringing suit." *Id.*

Drawing all reasonable inferences from the allegations in Plaintiffs' favor, I do not find that

any delay by the Plaintiffs  in bringing the unjust enrichment claim was unreasonable since the

Plaintiffs have alleged that the advertisements were pushed down, undiscoverable, and hidden.

ECF No. 21 ¶ 38. The Defendants have failed to explain how they would be prevented form

defending themselves against the Plaintiffs' claims, other than to state in a conclusory fashion

that they would be "severely prejudiced." *Gov't Employees Ins. Co.,* 195 A.3d at 436 (explaining

that the court saw "no unreasonable delay by the plaintiff in bringing its claim and, in any event,

the defendants presented no evidence as to how the plaintiff's delay caused them harm or in

24

some way prevented them from defending themselves against the plaintiff's claim"). I decline to dismiss the Plaintiffs' unjust enrichment claim as untimely.

Next, the Defendants argue that the unjust enrichment claim should be dismissed because the Plaintiffs "have made no factual allegations sufficient to establish" that "Defendants have been enriched due to the attraction of clientele to the Defendants' establishment." ECF No. 24 at 33. The Plaintiffs' Complaint alleges that the Defendants intended "to mislead consumers as to the women who worked at or endorsed the [Restaurant] and thereby attract consumers . . . for their own commercial benefit." ECF No. 21 ¶ 33. "Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images [and] have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image[s] because said publication has assisted Defendants in attracting clientele to their [Restaurant]." *Id.* ¶¶ 171-72. The Plaintiffs have not asserted a specific amount of damages that the Defendants have accrued as a benefit, but their allegations sufficiently set forth facts that the Defendants benefited by attracting customers with the Plaintiffs' images. I therefore decline to dismiss the Plaintiffs' unjust enrichment claim.

### H.  Quantum Meruit (Count Nine)

"[Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties. . . . A determination of a quantum meruit claim requires a factual examination of the circumstances and of the conduct of the parties. . . ." *Stewart v. King*, 994 A.2d 308, 315-16 (Conn. App. 2010). "The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that

she would be compensated in the future, impliedly promised to pay her for the services she

rendered." *Id.* at 316.

The Plaintiffs have not alleged that the Defendants represented to them that they would be

compensated and therefore, "impliedly promised to pay" them for their services rendered. In fact,

the Plaintiffs' Complaint states that the Defendants published the Plaintiffs' images "without any

Plaintiff's knowledge, consent or authorization." ECF no. 21 ¶ 36. The Plaintiffs also state that

the original publications were "hidden and undiscoverable," which undermines the theory that

the Plaintiffs expected to be compensated. *Id.* ¶ 38. Two judges of this Court have dismissed

quantum meruit claims alleged by some of the same plaintiffs in similar circumstances. *See*

*Lancaster v. Ecuadorian Investment Corp.*, 2020 WL 1863305, at *2; *see also Geiger v. C&G of*

*Groton, Inc.*, 424 F. Supp. 3d at 303 (explaining that plaintiffs "never gave permission for the

use of their photograph and [d]efendants never offered to pay [p]laintiffs for the use of their

photo. . . . As a result, there is no basis for contending that [p]laintiffs and [d]efendants entered

into an implied agreement which would now require [d]efendants to compensate [p]laintiffs for

their services.") I therefore dismiss the Plaintiffs' quantum meruit claim.[5]

### I.   Rule 12(f) Motion to Strike

The Defendant moves to strike the "immaterial and/or impertinent" images incorporated by

reference into the Amended Complaint that "predate the statute of limitations in this matter."

ECF No. 24 at 35. I have concluded that the Plaintiffs sufficiently allege facts to assert that the

continuing course of conduct doctrine tolled the statute of limitations. *See* part II.B.1 of this

opinion. Therefore, the images that the Defendants moves to strike are not immaterial. The

---

[5] I need not consider the Defendants' argument that the quantum meruit claim is time
barred because the Plaintiffs have failed to allege the elements for such a claim. ECF No. 24 at
10.

Defendants have not shown that the images have no bearing on the issues in the case or that to permit the images to remain would result in prejudice to them. *In re Fannie Mae 2008 Sec. Litig.*, 891 F.Supp.2d at 471. I decline to strike the images.

### J.  Claims Against Mr. Algoo

Finally, the Defendants argue that "Plaintiffs' claims against Christopher D. Algoo in their entirety should be dismissed . . . [because] the claims . . . are solely in his capacity as a member of the co-defendant, a Connecticut limited liability company," and " Section 34-133(a) of the Connecticut General Statutes provides immunity to managers and members of LLCs." The Defendants' argument lacks merit. "Under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active conscious force behind the . . . infringement." *Carter v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007) (citations and internal quotation marks omitted). The Plaintiffs allege in their Complaint that "Algoo, in his capacity as principal, owner and/or CEO of Algoo Realty, was the active, driving and conscious force behind the creation and implementation of the [Restaurant] marketing scheme. . . ." ECF No. 21 ¶ 23. While this allegation is somewhat conclusory, it is not implausible that the principal of a night club would be the "driving and conscious force" behind its marketing scheme. I therefore decline to dismiss the claims against Mr. Algoo.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 24, is GRANTED IN PART AND DENIED IN PART. The Plaintiffs' claims for conversion (count seven)  and quantum meruit (count nine) are dismissed. The Plaintiffs' claims for false advertising (count

one), false association (count two), appropriation of likeness (count three), false light (count

four), CUTPA (count five), and unjust enrichment (count eight) may proceed.

IT IS SO ORDERED.


_____/s/_____

Michael P. Shea, U.S.D.J.


Dated:  Hartford, Connecticut

September 4, 2020